UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 23-10092-WGY |
| ) | |
| NOEL HARO, ) | |
| ) | |
| Defendant ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Assistant United States Attorney Alathea E. Porter, hereby respectfully submits this sentencing memorandum in connection with the sentencing of defendant Noel Haro (hereinafter, the "Defendant"). On March 11, 2025, the Defendant pled guilty to the Indictment charging him with conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine and 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); distribution of and possession with intent to distribute 50 grams or more of methamphetamine, aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and 18 U.S.C. § 2 (Counts Two and Three); and distribution of and possession with intent to distribute 40 grams or more of fentanyl, aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi), and 18 U.S.C. § 2 (Count Four). There is a binding plea agreement in this case pursuant to Fed. R. Crim. P. 11(c)(1)(C).

Consistent with the plea agreement, for the reasons stated herein and as will be addressed at the sentencing hearing, the government recommends that the Court sentence the Defendant to 200 months of imprisonment, followed by 60 months of supervised release, and $400 in mandatory special assessments.

1

**Factual Background**

The background of the case is set forth in detail in the final Pre-Sentence Report ("PSR") prepared by the United States Probation Office ("Probation"), and is therefore not fully restated herein. PSR, ¶¶ 9-37. This case involves a conspiracy among large-scale methamphetamine and fentanyl distributors across the country. *Id.* The Defendant, while serving a life sentence, worked for years to recruit individuals outside of prison to continue his drug trafficking business while he was incarcerated. PSR, ¶¶ 9-11. In the course of monitoring the Defendant's jail calls, investigators learned that he had recruited Denise Guyette[1] to obtain and distribute controlled substances. PSR, ¶ 10. The Defendant connected Guyette to his drug suppliers in Arizona, so that she could transport narcotics from Arizona to Massachusetts on his behalf. PSR, ¶ 9-11.

In April 2022, investigators at the Massachusetts Department of Correction intercepted a letter from the Defendant to Guyette. PSR, ¶ 11. Inside of the envelope, investigators found a "Get out of Jail Free" card from the board game Monopoly, and on the back of the card, was a handwritten "key" to be used to discuss drug trafficking in code. *Id.* For example, the number "736" was written above the word "coke" (meaning cocaine), the number "747" was written above the word "meth" (meaning methamphetamine), the number "766" was written above the word "fety" (meaning fentanyl), and the number "746" was written above the word "heroin." *Id.* Copies of the front and back of that card are depicted below:

---

[1] Denise Guyette was charged in a separate indictment. *See United States v. Denise Guyette, et al.*, 23-cr-10031-IT. Guyette pled guilty and was sentenced to a term of 132 months imprisonment. PSR, ¶ 7.



After sending Guyette this key card, the Defendant instructed Guyette to travel to Arizona to meet with his drug suppliers and send drugs back to Massachusetts for further distribution. PSR, ¶ 12-19. Guyette did as instructed by the Defendant. Similarly, in May 2022, Guyette went back to Arizona for the same purpose, however, this time, investigators were able to seize the package, which contained fentanyl pills. PSR, ¶ 20.

The Defendant also worked with his brother and co-defendant Marcos Haro to arrange drug transactions outside of prison. PSR, ¶ 21. As set forth in detail, between July and November 2022, investigators utilized a cooperating witness to make controlled purchases of methamphetamine and fentanyl pills from the Defendant and his brother Marcos. PSR, ¶¶ 21-37. For each of those controlled purchases, the Defendant directed his brother and he was also involved in setting the

3

prices. PSR, ¶ 22. In total, nearly 2.5 kilograms of pure methamphetamine and over 215 grams of fentanyl are attributable to the Defendant. PSR, ¶ 44.

## Sentencing Guidelines

Probation determined that the Defendant's total offense level is 35. PSR, ¶ 54. The Defendant's base offense level is 36, because he is responsible for over 30,000 kilograms of converted drug weight. PSR, ¶ 45.

Pursuant to USSG § 3B1.1(c), Probation increased the Defendant's offense level by 2 because he was an organizer, leader, manager, or supervisor of criminal activity. PSR, ¶ 48. Probation then reduced the Defendant's offense level by 3 levels, pursuant to USSG § 3E1.1(a) and § 3E1.1(b). As set forth in the plea agreement, the government agrees with these calculations.

Probation determined that the Defendant has 3 criminal history points, which places him in criminal history category II. PSR, ¶ 68. Based on a criminal history category II, and with a total offense level of 35, Probation calculated the advisory sentencing guideline range as 188-235 months. PSR, ¶ 102.

## Consideration of the Section 3553(a) Factors

Taking into account the Defendant's role in the offense, his personal history and characteristics, as well as the nature of the offense, and considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully suggests that a sentence of 200 months is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). That sentence accounts for the characteristics of the Defendant, the extremely serious nature of the offense, the need to provide proper deterrence, to promote respect for the law, and provide adequate punishment for the offense.

1. **Characteristics of the Defendant**

The Defendant is a 50 year-old man, who appears to have come from a loving and stable family. PSR, ¶¶ 75-86. Despite that strong foundation, the Defendant began engaging in criminal conduct at the age of 19. PSR, ¶ 57. The Defendant has a very serious criminal history that is not adequately reflected in his criminal history score and category. By the age of 26, the Defendant was committed to a life sentence following a conviction in Arizona state for drug trafficking, money laundering, and illegally conducting an enterprise. PSR, ¶ 65. According to the PSR, the Defendant was one of the leaders of that drug trafficking organization. *Id.* The Defendant has been in prison for the last 24 years – essentially half of his life – and his problematic and violent conduct while in prison is noteworthy and a factor that weighs in favor of a sentence above the low-end of the guidelines.

Records from the Arizona Department of Corrections indicate that while incarcerated, the Defendant directed his girlfriend to sell drugs to generate money to fund his bail bond and defense counsel. *Id.* The Defendant also threatened to kill a witness through jail calls and letters, both prior to and during his trial. *Id.* Additionally, jail letters indicate that he conducted a plan to escape from jail and enlisted his girlfriend to assist him. *Id.* The Defendant also incurred multiple disciplinary infractions involving smuggling contraband in prison, bribery, assault, and disobeying orders. *Id.* The Defendant has assaulted other inmates, been found in possession of contraband cell phones, and he has been found in possession of methamphetamine, heroin, and marijuana – all while incarcerated. *Id.*

Perhaps most concerning, in 2014, the Defendant conspired with other inmates to assault a correctional officer on behalf of the Border Brother's gang. *Id.* As a result of this misconduct, the Defendant was transferred out of Arizona to the Illinois Department of Corrections. *Id.* While in

Illinois prison, the Defendant received disciplinary reports for engaging in gang or unauthorized organization activity. *Id.* The Defendant was subsequently transferred back to Arizona, but then was moved to Massachusetts to complete his sentence because he was deemed a security concern due to his influence over other inmates and his repeated introduction of cell phones and narcotics into Arizona prison facilities. PSR, ¶ 9, fn. 1.

### 2. Nature of the Offense

The Defendant is responsible for significant amounts of methamphetamine and fentanyl distributed throughout the New England area. These are two of the most serious and deadly illicit drugs to date, and both are wreaking havoc on our society. The Defendant engaged in this conduct from prison where he is serving a life sentence.

### A. Methamphetamine

Methamphetamine is a deadly and highly addictive drug that is an increasingly serious problem throughout the United States and in the District of Massachusetts.[2] The proportion of federal drug trafficking cases involving methamphetamine has steadily increased over the past 20 years, accounting for 48.7% of all drug trafficking cases in 2022, and becoming the predominant drug trafficked over the last decade.[3] Abuse of this potent stimulant is plaguing many parts of the country, and the government has seen a significant rise in the amount of methamphetamine in the District of Massachusetts over the course of the last several years.

---

[2] Martha Bebinger, *"Meth Use Is Rising In Boston, Intensifying The Opioid Crisis,"* appearing at https://www.wbur.org/news/2018/11/21/meth-worsening-opioid-epidemic (last accessed March 23, 2025).

[3] United States Sentencing Commission, *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System,* appearing at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf, at 16 (last viewed March 23, 2025) ("USSC 2024 Methamphetamine Trafficking Offenses").

6

Methamphetamine is second only to fentanyl in causing drug-related deaths in the United States.[4] The Centers for Disease Control and Prevention ("CDC") found that overdose deaths from psychostimulants, comprised mostly of methamphetamine, increased by 703% from 2011 to 2021.[5] Moreover, the Drug Enforcement Administration found that 31% of drug-related deaths in the United States are caused by psychostimulants – mostly methamphetamine.[6] Based on data available as of March 2, 2025, there were at least 29,278 recorded methamphetamine-related deaths nationwide for the prior 12-month period.[7]

Equally devastating, as methamphetamine production has shifted from makeshift, local labs to sophisticated Mexican laboratories, methamphetamine production and purity have increased exponentially.[8] Purity of methamphetamine has risen to nearly 100%. Indeed, in this case, investigators seized nearly 2.5 kilograms of pure methamphetamine. As the New York Times has reported, this combination of increased production and increased purity has been particularly lethal: "There is more meth on the streets today, more people are using it, and more of them are dying."[9]

---

[4] Drug Enforcement Administration, *2024 National Drug Threat Assessment*, appearing at https://www.dea.gov/sites/default/files/2024-05/5.23.2024%20NDTA-updated.pdf, at 3 (last viewed March 23, 2025) ("DEA 2024 Assessment").

[5] USSC 2024 Methamphetamine Trafficking Offenses, at 6.

[6] DEA 2024 Assessment, at 6.

[7] National Center for Health Statistics, *National Vital Statistics System, Provisional Drug Overdose Death Counts,* appearing at https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (last accessed March 24, 2025) (hereinafter, "2024 VSRR Overdose Death Counts").

[8] Frances Robles, "*Meth, the Forgotten Killer, is Back. And It's Everywhere*", The New York Times, February 13, 2018, appearing at https://www.nytimes.com/2018/02/13/us/meth-crystal-drug.html (hereinafter, "Frances Robles, *Meth, the Forgotten Killer, is Back. And It's Everywhere*") (last accessed June 24, 2024).

[9] Frances Robles, *Meth, the Forgotten Killer, is Back. And It's Everywhere.*

7

In recent years, methamphetamine has become much more prevalent in the Northeast.[10] Most of the methamphetamine supply is produced in Mexico and transported to the United States.[11] That is because methamphetamine produced in Mexico presents a lower cost, higher purity, and higher potency alternative.[12] Due to its low costs of production and maintenance, combined with the expansion of Mexican drug cartels into major United States cities and their extensive drug distribution networks within local communities, methamphetamine remains in constant supply and is easily accessible.[13] Purer, cheaper methamphetamine leads to more deaths. The number of methamphetamine overdoses in Massachusetts alone increased threefold from 2018 to 2022 (growing from 70 deaths to 210).[14] Between 2022 and 2023, the time period in which the Defendant was distributing large quantities of methamphetamine in the New England area, there were over 200 reported methamphetamine-related overdose deaths in Massachusetts, approximately 80 methamphetamine-related overdose deaths in Connecticut, and around 60 methamphetamine-related overdose deaths in Rhode Island.[15] In fact, "[t]he rate of all drug-related E[mergency] D[epartment] visits was highe[r] among patients residing in the Northeast[ern United States] (2,531 per 100,000 [residents])" than any other region in the nation.[16]

---

[10] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf, at 23 (last accessed June 24, 2024) (hereinafter, "DEA 2020 Assessment"); Streck, Joanna M et al., *Injection of Methamphetamine Has Increased in Boston, Massachusetts: 5 Waves of Centers for Disease Control and Prevention State Surveillance Data*, 17.3 J. OF ADDICTION MEDICINE 349–352 (2023).

[11] DEA 2024 Assessment, at 31.

[12] *Id.*

[13] *Id.* at 3-16.

[14] 2022 VSRR Overdose Death Counts.

[15] 2022-2023 VSRR Overdose Death Counts.

[16] Substance Abuse and Mental Health Services Administration, PEP22-07-03-002, *Findings from Drug-Related Emergency Department Visits, 2021*,

Even when not lethal, the physical and emotional effects of methamphetamine abuse are dramatic. Methamphetamine has a horrific impact on its users and on the community. Methamphetamine is a tremendously addictive drug, which can cause dramatic physical and emotional changes on those who use it, including increases in aggressive and violent behavior.[17] The physical effects on users are well-documented. The emotional changes are equally devastating:

> Chronic abusers may exhibit symptoms that can include significant anxiety, confusion, insomnia, mood disturbances, and violent behavior. They also may display a number of psychotic features, including paranoia, visual and auditory hallucinations, and delusions (for example, the sensation of insects creeping under the skin). Psychotic symptoms can sometimes last for months or years after a person has quit abusing methamphetamine, and stress has been shown to precipitate spontaneous recurrence of methamphetamine psychosis in formerly psychotic methamphetamine abusers.[18]

---

https://store.samhsa.gov/sites/default/files/pep22-07-03-002.pdf (2022), at 9 (last accessed June 24, 2024).

[17] Mark A. R. Kleiman, Jonathan P. Caulkins, and Angela Hawken, *Drugs and Drug Policy: What Everyone Needs to Know* 120 (Oxford University Press 2011) ("There is . . . a much stronger association between violence and regular methamphetamine use. Heavy use of methamphetamine increases the likelihood of attack behaviors and aggression, with the most compelling evidence coming from laboratory studies involving mice.").

[18] National Institute on Drug Abuse, *What are the long-term effects of methamphetamine abuse,* April 7, 2017, appearing at https://www.drugabuse.gov/publications/research-reports/methamphetamine/what-are-long-term-effects-methamphetamine-abuse (last accessed June 24, 2024).

And, unlike opioid addiction, there are no approved drugs available for treatment of methamphetamine addiction.[19] Addicted users who choose to stop using methamphetamine may face withdrawal symptoms including severe depression, psychosis, and intense drug cravings.[20]

### B. Fentanyl

The danger of fentanyl is well-documented. *See, e.g., United States v. Simms*, No. 1:19-CR-423, 2019 WL 7049930, *6 (N.D. Ohio Dec. 23, 2019) ("The distribution of fentanyl, one of the most deadly illegal drugs on the black market, poses an incredible threat to community members."); *United States v. Brown,* No. 17-00219-02, 2017 WL 4883375, *3 (W.D. Penn. Oct. 30, 2017) ("The Court is mindful that the distribution of fentanyl, in particular, has recently resulted in serious harm to the community—with multiple reports of overdoses and deaths resulting from that particular drug being reported in the news."). Fentanyl is an extremely potent synthetic opioid.[21]

This Court is well aware that fentanyl is a deadly drug that has wreaked havoc in the United States, and more specifically in Massachusetts, over the past several years. Fentanyl remains the primary driver behind the ongoing opioid crisis, with fentanyl involved in more overdose deaths than any other illicit drug.[22] Indeed, "[n]early 70 percent of all drug overdose deaths in the United

---

[19] Carmen Heredia Rodriguez, *"Meth's Resurgence Spotlights Lack of Meds To Combat the Addiction,"* Kaiser Health News, January 14, 2019, appearing at https://khn.org/news/meths-resurgence-spotlights-lack-of-meds-to-combat-the-addiction/ (last viewed March 24, 2025).

[20] National Institute on Drug Abuse, *Methamphetamine*, appearing at https://nida.nih.gov/research-topics/methamphetamine#long-term (last accessed March 24, 2025).

[21] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/documents/2021/03/02/2020-national-drug-threat-assessment#:~:text=The%202020%20National%20Drug%20Threat%20Assessment%20%28NDTA%29%20is,laundering%20of%20proceeds%20generated%20through%20illicit%20drug%20sales, at 7 (March 2021) (last visited March 24, 2025) (hereinafter, "DEA 2020 Assessment").

[22] *Id.*, at 7.

States in 2018 involved an opioid. Deaths involving synthetic opioids other than methadone—the category which includes fentanyl—increased by 10 percent according to data provided by the Centers for Disease Control and Prevention (CDC)."[23] "Fentanyl use and overdose deaths are more widespread across the country as the opioid crisis continues. Overall, fentanyl-involved deaths are still the most concentrated in states in the Great Lakes and Northeast of the United States."[24]

The most recent data shows that for the first time since 2018, the United States has seen a decrease in overdose deaths, with the CDC reporting a 14.5% decrease between June 2023 and June 2024.[25] Despite that decrease, which is likely a result of the expanded availability of Narcan, the numbers remain staggering: in 2023, more than 107,000 people lost their lives to a drug overdose, with nearly 70% of those deaths attributed to opioids such as fentanyl.[26]

To understand the scope of the fentanyl crisis, it is helpful to compare the overdose statistics to other death statistics. In 2021, there were 106,700 overdose fatalities in the United States and 71,000 involved synthetic opioids, overwhelmingly fentanyl.[27] In the same year, 43,600 people died of breast cancer and about 43,000 died in traffic accidents.[28] Put another way, almost twice as many people die in a year from fentanyl than from breast cancer or traffic accidents. In

---

[23] *Id.*

[24] *Id.* at 12.

[25] U.S. Department of Justice Drug Enforcement Administration, *Overdose Deaths Decline, Fentanyl Threat Looms,* https://www.dea.gov/press-releases/2024/12/16/overdose-deaths-decline-fentanyl-threat-looms (Dec. 16, 2024) (last visited March 24, 2025).

[26] *Id.*

[27] Tamara Kerrill Field, *The fentanyl epidemic is more than a crisis. It's a massacre.*, BOSTON GLOBE, https://www.bostonglobe.com/2023/02/24/metro/fentanyl-epidemic-is-more-than-crisis-its-massacre/ (Feb. 24. 2023 at 11:54 a.m.) (last visited March 24, 2025).

[28] *Id.*

11

fact, opioid overdoses are now the leading cause of death for Americans aged 18 to 45, with fentanyl being the most significant contributor.[29]

These statistics are not hypothetical: they describe the situation occurring right now in this district. Behind each statistic is someone's mother, father, child, brother, sister, or friend. The epidemic is real and being felt every day by families across Massachusetts.

### 3. Need for the Sentence Imposed

As the discussion above regarding the nature of the offense makes clear, there is a compelling need to deter individuals who may be inclined to participate in drug trafficking — particularly substances as dangerous as fentanyl and methamphetamine. A significant sentence of imprisonment is warranted to deter individuals from engaging in trafficking of these deadly and devastating drugs, as the dangers associated with that conduct cannot be overstated. Individuals tempted to engage in drug trafficking must understand that *any* involvement with fentanyl and methamphetamine will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to those who might otherwise consider involvement with these dangerous drugs that they must resist the temptation. Moreover, the fact that the Defendant is serving a life sentence weighs in favor of imposing a significant sentence. Even if largely symbolic in this

---

[29] *Id.*

particular case, a sentence in the middle of the guideline range is warranted to adequately reflect the seriousness of this offense and to promote respect for the law.

## CONCLUSION

For the reasons set forth herein, and as will be addressed at the sentencing hearing, the government recommends that the Court sentence the Defendant to 200 months in prison, followed by five years of supervised release, and $400 in mandatory special assessments.

Dated: July 3, 2025                     Respectfully submitted,

                                                 LEAH B. FOLEY
                                                 United States Attorney

By:   */s/ Alathea E. Porter*
       ALATHEA E. PORTER
       Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed under seal and provided via electronic mail to counsel for the Defendant and the United States Probation Office on July 3, 2025.

                                               */s/ Alathea E. Porter*
                                               ALATHEA E. PORTER
                                               Assistant U.S. Attorney